RENDERED:  SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000139-MR


JUAN R. PELEGRIN-VIDAL                                          APPELLANT



APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 02-CR-002886



COMMONWEALTH OF KENTUCKY                                         APPELLEE



OPINION
AFFIRMING IN PART
AND REVERSING IN PART

** ** ** ** **

BEFORE:  ACREE, DIXON, AND MCNEILL, JUDGES.

ACREE, JUDGE:  Juan R. Pelegrin-Vidal (Appellant), *pro se*, appeals the

Jefferson Circuit Court's April 23, 2018, order denying his petition for post-

conviction relief claiming ineffectiveness of his appointed counsel's assistance.

Appellant also appeals the circuit court's requirement that he pay a filing fee.  For

the following reasons, we affirm in part and reverse in part.

# BACKGROUND

Appellant, a 1995 immigrant from Cuba, was tried and found guilty of murder and burglary. In 2002, Appellant began a relationship with Elaine Fonseca, and moved in with Elaine at her mother's house. The relationship led to Appellant's crime, indictment, and punishment.

Twenty years younger than Appellant, Elaine became pregnant with his child. The couple disclosed their relationship, and Elaine's pregnancy, to Elaine's mother. Elaine's mother kicked Appellant out of the house and pressured Elaine to have an abortion. The procedure was scheduled for December 11, 2002.

Appellant went to the abortion clinic and begged Elaine not to go through with it. Elaine did not listen, so Appellant left the clinic and went to Elaine's father, who would not help him.

After the abortion, Appellant called Elaine several times, but she never answered. The next morning, Elaine's father left for work around 6:00 a.m. and her mother left twenty minutes later, leaving Elaine alone in the house. Appellant was at the laundromat around the corner. He called Elaine around 6:30 a.m., and she answered. She told him not to be upset about the abortion, and that her parents would eventually accept their relationship. Nine minutes later, 911 dispatch received a call from Elaine's residence. The caller said someone was breaking into the residence, but the call disconnected. Shortly thereafter, police

discovered Elaine lying on the living room floor. She died a few hours later, in the hospital. The autopsy showed she was beaten severely with a blunt instrument.

Appellant denied being in Elaine's home. He says he drove past her house around 6:30 a.m., but there were emergency personnel there, so he did not stop. Appellant also missed his doctor's appointment scheduled for that afternoon. Instead of going to his doctor, he fled to Texas. Ultimately, he was apprehended and questioned in Florida.

Appellant was tried by a jury and found guilty. For reasons not relevant here, the Supreme Court reversed the conviction and remanded the case. *Pelegrin-Vidal v. Commonwealth*, No. 2007-SC-000848-MR, 2010 WL 1006277 (Ky. Mar. 18, 2010). After a new trial, Appellant was again found guilty, and the conviction was affirmed. *Vidal v. Commonwealth*, No. 2015-SC-000167-MR, 2017 WL 636417 (Ky. Feb. 16, 2017). He then filed an RCr[1] 11.42 motion for a new trial, claiming ineffectiveness of counsel. The motion was denied; this appeal followed.

## STANDARD OF REVIEW

Every defendant is entitled to reasonably effective – but not necessarily errorless – counsel. *Fegley v. Commonwealth*, 337 S.W.3d 657, 659 (Ky. App. 2011). In evaluating a claim of ineffective assistance of counsel, we

---

[1] Kentucky Rules of Criminal Procedure.

-3-

apply the "deficient-performance plus prejudice" standard articulated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984).

Under this standard, the movant must first prove that his trial counsel's performance was deficient. *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish deficient performance, the movant must show that counsel's representation "fell below an objective standard of reasonableness" such that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment[.]" *Commonwealth v. Tamme*, 83 S.W.3d 465, 469 (Ky. 2002); *Commonwealth v. Elza*, 284 S.W.3d 118, 120-21 (Ky. 2009).

Second, the movant must prove that counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, the movant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068.

As a general matter, we recognize "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*, 466 U.S. at 690, 104 S. Ct. at 2066. For that reason, "[j]udicial scrutiny of counsel's performance [is] highly deferential." *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065. We must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

## ANALYSIS

Appellant makes multiple arguments of ineffective assistance of counsel. We address each in turn.

*Counsel's Failure to Subpoena Phone Records and to Engage an Investigator*

Appellant first argues his attorney failed to subpoena his phone records and failed to employ an investigator to corroborate his story. But his story, by his own admission, was that he talked to Elaine by phone at 6:30 a.m. while at a laundromat near her house. This established he had the opportunity to commit the crime. An investigator's corroboration of that testimony by phone records or otherwise only would have made this part of the prosecution's case stronger. It would not have justified the circuit court's grant of funding for an investigator.

Otherwise, generally, without asserting the facts an investigation would have yielded that could change the outcome of the trial, there is no basis to find counsel ineffective. Nothing more than speculation that an investigator might have found something new is insufficient basis for finding counsel ineffective.

We see nothing in the record that would lead us to believe an investigation by defense counsel would have yielded evidence in aid of Appellant's defense. Therefore, an evidentiary hearing is unnecessary. Like the circuit court,

we are not convinced that subpoenaing phone records or paying for an investigator would have changed the outcome of Appellant's trial. We are not persuaded by this argument.

*Vienna Convention*

Appellant next argues the circuit court erred by denying him an evidentiary hearing regarding his counsel's failure to pursue relief under the Vienna Convention when he was not advised of his right of consular assistance at the time he was questioned in Florida. Appellant fails to demonstrate any prejudice under *Strickland*. He directs this Court to no factual basis for this claim, and this Court independently searching the record has found none.

Moreover, an RCr 11.42 motion is not the vehicle to pursue such relief. The Vienna Convention does not guarantee defendants any assistance of counsel and, indeed, secures only the right of foreign nationals to have their consulate informed of their arrest or detention. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349, 126 S. Ct. 2669, 2681, 165 L. Ed. 2d 557 (2006). Additionally, this issue arose in the first trial, but Appellant failed to raise it in either appeal to the Supreme Court. Accordingly, we decline to reverse on this basis.

*911 Call Error*

Appellant's next argument pertains to evidence of the 911 call. He believes the court should have admitted into evidence two transcripts – the

Commonwealth's version and his version transcribed in Cuban Spanish. We find no merit here because the circuit court, on remand, was told how to handle the 911 transcript. The circuit court was to delete Appellant's surname in the transcript where the tape was considered "inaudible." The Court stated that where "there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript," which "assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy." *Pelegrin-Vidal*, 2010 WL 1006277, at *5 (quoting *United States v. Robinson*, 707 F.2d 872, 879 (6th Cir. 1983)). The Supreme Court did not state that Appellant's translated copy should be submitted to the jury. The circuit court and Appellant's counsel were bound by the mandate. *See Illinois Cent. R. Co. v. Haynes*, 144 Ky. 508, 139 S.W. 754, 755 (1911) ("duty of the circuit court to obey the mandate of this court").

At the retrial, the 911 tape was played, and the single transcript was submitted to the jury as instructed by the Supreme Court. Appellant did not object and did not raise this alleged error on direct appeal. If Appellant objected to the entry of the 911 call, or the lack of a transcript as he interpreted it, he should have objected and made a claim on direct appeal.

*Interviewing Potential Witnesses*

Appellant also argues his counsel erred by refusing to call certain witnesses and by not utilizing prior testimony of unavailable witnesses. "[T]rial counsel's choice of whether to call witnesses is generally accorded a presumption of deliberate trial strategy and cannot be subject to second-guessing in a claim of ineffective assistance of counsel." *Saylor v. Commonwealth*, 357 S.W.3d 567, 571 (Ky. App. 2012) (citation omitted). We have examined the record, and nothing causes the Court to conclude counsel's decision regarding these witnesses was other than trial strategy.

One witness would have testified to the family dynamic, which would have little or no impact on the outcome. Another witness would testify to the reason Appellant left Kentucky. This testimony would not have aided Appellant's case. Appellant himself said he did not go to his doctor's appointment out of fear he would be arrested. Appellant was not prejudiced by the failure to call these witnesses. Choosing not to call them was mere trial strategy and does not satisfy the *Strickland* requirements.

*Mistrial*

Appellant's last claim of error pertains to his counsel's failure to move for a mistrial after the Commonwealth introduced evidence of the condition

of his apartment three months after the murder. Appellant believed the apartment had been staged by the police. But there is no evidence to support the theory.

In fact, the photographs entered into evidence by the Commonwealth showed Appellant's apartment was a virtual shrine to Elaine. When Appellant presented the circuit court with this argument on his RCr 11.42 motion, the court concluded such evidence was more likely to have helped than to have undermined Appellant's theory that there was an alternate perpetrator. Appellant cannot explain how the circuit court would have perceived the argument differently if it had been presented in the context of a mistrial motion. Therefore, this Court cannot say the outcome would have been different had Appellant's counsel moved for a mistrial. Failing to do so is not ineffective assistance of counsel.

*Filing Fees*

Appellant contends the circuit court abused its discretion when it charged him an $80 fee to file his RCr 11.42 motion. The applicable rule plainly states: "There shall be no filing fee for . . . proceedings under RCr 11.42 . . . ." CR[2] 3.02(1)(a). Imposition of the filing fee constituted error. Appellant is entitled to a refund for his filing fee.

---

[2] Kentucky Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the Jefferson Circuit Court's order denying a vacated judgment.

ALL CONCUR.

BRIEF FOR APPELLANT:

Juan R. Pelegrin-Vidal, *pro se*
La Grange, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Gregory C. Fuchs
Assistant Attorney General
Frankfort, Kentucky